IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BRYAN E. FISCHER,

Plaintiff,

v.

G4S SECURE SOLUTIONS USA, INC. & NUCLEAR POWER PLANT SECURITY OFFICERS OF AMERICA,

Defendants.

HON. JEROME B. SIMANDLE

Civil No. 10-6792 (JBS/AMD)

**OPINION**

APPEARANCES:

James M. Carter, Esq.
LAW OFFICES OF HOFFMAN DIMUZIO
4270 Route 42
Turnersville, NJ 08012
Counsel for Plaintiff

John K. Bennett, Esq.
JACKSON LEWIS LLP
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960
Counsel for Defendant G4S Secure Solutions USA, Inc.

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This employment-related matter is before the Court on a motion to dismiss filed by Defendant G4S Secure Solutions USA, Inc. [Docket Item 4.] The principal issues are whether Plaintiff's two remaining claims for breach of contract and retaliation are preempted by the Labor Management Relations Act, 29 U.S.C. § 185(a), and whether the Complaint contains sufficient

allegations to support the latter claim. As explained below, the breach of contract claim is preempted, and the retaliation claim is either preempted or fails to state a claim, and either way must be dismissed.

## II. BACKGROUND

Plaintiff, Bryan E. Fischer, brought this suit against his former employer G4S Secure Solutions USA, Inc. and his union, the Nuclear Power Plant Security Officers of America. Mr. Fischer worked as a security officer at Salem-Hope Creek nuclear power plant, a PSE&G facility in Salem County, New Jersey. He alleges that in February 2010 he encouraged a co-worker, on whose breath he smelled alcohol, to report his condition to a supervisor.

Fischer claims that after experiencing increased hostility from his union as a result of this conduct, the Union President told him not to address his concerns to the PSE&G official in charge of employee matters, but that Fischer did so anyway, leading to further hostility from the Union. Compl. ¶¶ 16-17. It is unclear precisely what Fischer alleges he said to the PSE&G employee; he alleges that he "complained of unfair treatment of armed nuclear security officers, including himself." Compl. ¶ 38.

Eventually, PSE&G officials reassigned Fischer to a shift at an administrative office building because of concerns about

Fischer's safety, Fischer claims. Compl. ¶ 19. On learning of this transfer, the Union President objected and Plaintiff's employer, G4S, "essentially suspended [Fischer] with pay pending an investigation," Compl. ¶ 20, without the possibility of overtime or other benefits. Compl. ¶ 31.

At the conclusion of the investigation, Plaintiff was invited to return to work but warned that his co-workers were even more hostile toward him than when he left. Compl. ¶ 22. Given the option of transferring to a facility in New Hampshire involving a pay cut, loss of seniority, and a night shift, Plaintiff refused to return to Salem-Hope Creek and refused the transfer, and was ultimately terminated. Compl. ¶ 25.

The Complaint initially brought seven claims against G4S and the Union. Count I is a claim against G4S for breach of contract, based on G4S's failure to abide by the promise in their employee manual that concerns raised about colleagues would be dealt with fairly and confidentially. Count II cites no particular legal cause of action and contends that Plaintiff was unlawfully retaliated against for complaining to the PSE&G employee. Count III is an unspecified claim based on G4S's bad faith and lack of fair dealing. Count IV is a similar claim against the Union. Count V is quite unclear, but appears to be some kind of derivative liability claim against the Union. Count VI is a claim against G4S and the Union involving an allegation

that Defendants stopped deducting union dues from Plaintiff's check in an effort to interfere with his union membership. Finally, Count VII claims that GS4 is liable for the Union's unlawful conduct.

Plaintiff filed suit in the Superior Court of New Jersey, Law Division, Gloucester County, on November 16, 2010. G4S removed the matter to this court based on alleged complete preemption of the state law claims. See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1 (1983) (explaining complete preemption doctrine).

Plaintiff has conceded that he has no legitimate causes of action against the Union, and so the Court terminated the Union as a party and dismissed Counts IV, V, and VI as against the Union. [Docket Item 9.] In the present motion, Defendant has moved to dismiss Counts I, II, III, VI, and VII. Plaintiff concedes that III, VI, and VII should be dismissed. And so the Court addresses the remaining contested claims: Counts I and II against GS4 only.

Defendant argues that Counts I and II are pre-empted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), since the resolution of the claims requires interpretation of the collective bargaining agreement between G4S USA and the Union. Defendant contends that the Court will have

to interpret the following provision of the agreement:

> This Agreement shall not be construed to infringe upon or impair any of the normal management rights of the Employer, which are not inconsistent with the provisions of this Agreement. Included among management rights is the authority to administer and/or manage the Employer's business, including but not limited to . . . the right to hire, promote, demote, transfer, discipline, suspend or discharge employees for just cause.

Ex. to Compl. ("Agreement") Art. 4.1 at 4-5. Defendant also argues that, as to Count II, Plaintiff fails to state a claim for retaliation.

## III. DISCUSSION

### A. Standard of Review

Rule 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Further, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, --U.S.--, 129 S.Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

The Third Circuit requires that a district court presented with a motion to dismiss conduct a two-part analysis, as explained in Iqbal: first, the factual and legal elements of a claim should be separated. The district court may accept all the

complaint's well-pleaded facts as true, but may disregard any legal conclusions. Iqbal, 129 S.Ct. at 1949-50. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id.

When considering a motion to dismiss, a district court generally relies only upon "the complaint, attached exhibits, and matters of public record." Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The Court may also consider documents which are not physically attached to the pleadings but whose contents are alleged in the complaint and whose authenticity is not contested. Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).[1]

**B. Preemption**

In § 301 of the Labor Management Relations Act, Congress

[1] Defendant asks the Court to strike Plaintiff's opposition as untimely. Opposition to Defendant's motion was due February 7, 2011, but not filed until February 24, 2011. However, on February 22, 2011, Plaintiff's counsel wrote to the Court requesting an extension until February 23, 2011. The Court's procedure when a first request for extension is sought under ordinary circumstances is, if the motion is granted, to inform the moving party's counsel by telephone and instruct him or her to file a letter on the docket confirming the extension. In this case, the Court informed Plaintiff's counsel that it would grant an extension to February 25, 2011. Unfortunately, Plaintiff's counsel failed to file a letter confirming the extension as instructed, which is why Defendant was left unaware that the extension has been granted. But, since an extension was granted, the Court will consider the opposition as timely.

vested jurisdiction in the federal courts over suits for violation of contracts between an employer and a labor organization representing employees in certain industries. 29 U.S.C § 185(a). By its terms the statute only provides that such suits "may be brought" in the district courts. Id. But in Textile Workers v. Lincoln Mills, the Supreme Court ruled that § 301 requires federal common law to govern disputes regarding collective bargaining agreements. 353 U.S. 448, 456 (1957). From there, the Court reasoned in Teamsters v. Lucas Flour Co. that this federal common law preempts inconsistent state law that might govern such disputes. 369 U.S. 95, 103 (1962). Thus, contract suits alleging violation of collective bargaining agreements must be brought under § 301 and be resolved under federal law. Id.

In 1985, the Supreme Court further extended the scope of this preemption, finding that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement" also must be resolved under § 301 and federal law, "whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985). This preemption also extends to suits by employees against employers. Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1536 n.5 (3d Cir. 1992).

While reading § 301 quite expansively, the Supreme Court has been careful to make clear that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted." Lueck, 471 U.S. at 211. Indeed, "it would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Id. Instead, § 301 preemption only applies to "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties." Id. at 213; Livadas v. Bradshaw, 512 U.S. 107, 123 (1994) ("§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.").

1. Breach of Contract

Plaintiff claims that an employee manual distributed to employees of G4S promised that concerns raised by employees would be treated fairly and confidentially, and that G4S's treatment of Plaintiff violated this promise. Under New Jersey law, an employee manual can create an independent contractual obligation apart from the employment contract. Woolley v. Hoffman LaRoche, Inc., 99 N.J. 284, 297, 307 (1985). The question on preemption is whether this independent contract claim is dependent upon and

requires interpretation of the collective bargaining agreement.

In Henderson v. Merck & Co., Inc., 998 F. Supp. 532 (E.D. Pa. 1998), the court addressed a similar preemption issue. In that case, the plaintiff claimed that his employer breached a promise in an employment manual. Id. at 535. Although the Court found that no independent contract was formed for various factual reasons, id. at 538, the Court found in the alternative that even if the employment handbook did form an independent contract, assessing a breach of contract claim would have required interpretation of the collective bargaining agreement because the agreement controlled the rights and obligations of the employer with respect to discharge. Id. at 539. Specifically, the Court found that it would have to construe a provision stating that "no regular employee shall be discharged except for just cause," in order to determine whether the alleged independent contract conflicted with the collective bargaining agreement. Id.

Henderson's dictum is correct and applicable to this case. Because the contractual rights afforded by the employee manual do not arise independently from state law, but instead are subject to modification by Plaintiff's larger employment contract, the employee manual must be viewed alongside the rights and duties created (or waived) by the collective bargaining agreement. The Court would have to determine, among other things, whether the employee manual modified the provision of the collective

bargaining agreement stating that the employer retained "the right to hire, promote, demote, transfer, discipline, suspend or discharge employees for just cause," and if not, whether "just cause" encompasses the justification for the adverse employment actions taken in this case. Therefore, the breach of contract claim is preempted.

When a court determines that a state law claim is preempted by § 301, it can either treat the claim as a § 301 claim or dismiss such claim as preempted. See Allis-Chalmers, 471 U.S. at 220. In this case, Plaintiff has not alleged that he completed the appropriate administrative grievance procedures prior to filing this lawsuit, and so the Court will dismiss the claim without prejudice to bringing the claim pursuant to LMRA, to the extent Plaintiff has such a colorable claim under the applicable law. See, e.g., Allis-Chalmers, 471 U.S. at 220-21.

2. Retaliation

The legal basis for Count II is unclear from the pleadings, but neither possible basis states a claim. Either the claim must be dismissed for failure to make the allegations necessary to state a claim under New Jersey's Conscientious Employee Protection Act (CEPA), N.J. Stat. Ann. § 34:19-1, or the claim is preempted because it attempts to state a common law retaliation claim governed by the collective bargaining agreement. Either

way, it must be dismissed, as explained below.

Although the Complaint does not identify CEPA as the basis for Count II, Plaintiff explains in his opposition to this motion that CEPA was his intended source of legal authority for his claim. Pl.'s Br. 6. CEPA protects an employee from retaliation by his employer when the employee complains about illegal or improper conduct, including conduct that is contrary to the "clear mandate of public policy," a phrase used in the Complaint. See Reynolds v. TCM Sweeping, Inc., 340 F. Supp. 2d 541, 545 (D.N.J. 2004).

To the extent Plaintiff intends to bring a CEPA claim, the allegations in the present pleading do not support it. The Complaint alleges Plaintiff spoke out "against G4S's activities, policies, and practices," by "contacting PSEG's Employee Concerns Manager," Compl. ¶¶ 34-35, and that G4S took retaliatory action against him "after he contacted PSEG's Employee Concerns Manager." However, critically, the alleged interaction with the Employee Concerns Manager was when Plaintiff "complained of unfair treatment of armed nuclear security officers, including himself." Compl. ¶¶ 37-38. Without a more specific statement of the "unfair treatment," and how such treatment offends public policy, it is not clear that Plaintiff is alleging, "retaliation for an employee reporting an unsafe condition, in this case, a possibly intoxicated co-worker," as the opposition brief attempts

to re-frame the claim. [Id. at 6.] Therefore, Plaintiff's present Complaint has not identified a "clear mandate of public policy," and the use of conclusory labels will not suffice. Iqbal, 129 S. Ct. at 1949-50.

Plaintiff's opposition brief also repeats the characterization of Count II as "arising from violations of New Jersey common law." [Docket Item 8 at 2.] To the extent Plaintiff is alleging that he complained of general matters of workplace conduct outside the scope of CEPA and therefore governed by the collective bargaining agreement, such a claim would be preempted under § 301 of the LMRA, as explained above.

Although the present Count II will be dismissed, the dismissal must be without prejudice to amend because it is plausible that Plaintiff, if given an opportunity, could state a CEPA claim. It is Plaintiff's obligation, if he seeks to pursue a CEPA claim, to draft the proposed amended complaint and seek leave to amend under Rule 15(a), Fed. R. Civ. P. However, to demonstrate that such an amendment is not futile based on what is currently known to the Court, the Court will briefly review CEPA's requirements.

CEPA claims are not preempted by § 301, because they exist independently of private agreements, and cannot be waived or altered by agreement of private parties. Carluccio v. Parsons Inspection & Maintenance Corp., Civil Action No. 06-4354 (JLL),

2007 WL 1231758, at *4-5 (D.N.J. April 24, 2007); Reynolds v. TCM Sweeping, Inc., 340 F. Supp. 2d 541 (D.N.J. 2004); Patterson v. Exxon Mobil Corp., 262 F. Supp. 2d 453 (D.N.J. 2003); see also Lingle, 486 U.S. at 470 (holding that state retaliatory discharge statute was not preempted by LMRA § 301 because adjudication of the claim focused on the employee's conduct and the employer's conduct and motivations, not on an interpretation of the terms of a collective bargaining agreement).[2]

And while the CEPA claim is not sufficiently clearly pleaded in the current complaint, such a claim is not inconsistent with the current pleadings. CEPA requires a plaintiff to prove four elements for a successful claim: (1) that the plaintiff reasonably believed that the activity to which he or she objected violated a law, regulation, or a clear mandate of public policy

[2] If the pleadings were amended to state such a claim, the Court would likely have original jurisdiction over it, so remand is not called for. With the termination of the other defendant, the case now meets the requirements of 28 U.S.C. § 1332. Normally, diversity jurisdiction "is to be tested by the status of the parties at the commencement of the suit." Field v. Volkswagenwerk AG, 626 F.2d 293, 305 (3d Cir. 1980). When this case was removed, the only basis for removal was federal question jurisdiction, since the Union is considered a citizen of every state in which its members are residents. However, "the time-of-filing rule admits exceptions in cases where the parties change, in contrast to cases in which the circumstances attendant to those parties change." Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 152 (3d Cir. 2009) (citing Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 577 (2004)). Now that the Union has been dismissed, there appears to be complete diversity because Plaintiff is a resident of New Jersey and the remaining Defendant is a Delaware corporation with a principal place of business in Florida.

concerning the public health, safety or welfare or protection of the environment; (2) that the plaintiff performed one of the whistle-blowing activities defined by the statute; (3) that an adverse employment action has been taken against him or her; and (4) that the whistle-blowing activity caused such adverse employment action. See N.J. Stat. Ann. § 34:19-3; Ivan v. County of Middlesex, 595 F. Supp. 2d 425, 468 (D.N.J. 2009).

Plaintiff makes some reference to alcohol use and "safety issues" in the Complaint, though he does not make clear precisely what he objected to and to whom. Generally, federal regulations require that nuclear power plants prohibit the consumption of alcohol "[w]ithin an abstinence period of 5 hours preceding the individual's arrival at the licensee's or other entity's facility." 10 C.F.R. § 26.27. This regulation applies to security officers. 10 CFR § 26.4. There is a strong public policy of keeping nuclear power plants free of intoxicated workers. International Broth. of Elec. Workers, Local 97 v. Niagara Mohawk Power, 143 F.3d 704, 718 (2d Cir. 1998) ("There can be no doubt . . . that there exists a strong public policy in favor of promoting a safe, drug-free working environment in the nuclear power industry.").

Moreover, CEPA's broad prohibition on retaliation applies to retaliation against an employee who "[o]bjects to . . . any activity," so long as the employee reasonably believes that the

activity in question is in violation of a law, or a rule or regulation promulgated pursuant to law, or is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment. N.J. Stat. Ann. 34:19-3. It even applies to objections about the conduct of co-employees, Higgins v. Pascack Valley Hosp., 730 A.2d 327, 336 (N.J. 1999), and requires only that the objection be the cause of the adverse employment action. Id.; see Young v. Schering Corp., 645 A.2d 1238, 1245 (N.J. Super. Ct. App. Div. 1994).

Whether Plaintiff made such objections, and whether he can trace such objections to an adverse employment action, the Court will not prejudge. Whether any given employment action constitutes retaliation would also depend on the specific actions taken by the employer and the factual context. See Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 72-73 (2006); Kolb v. Burns, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999) (noting that standards for Title VII retaliation apply to CEPA claims); see also Prise v. Alderwoods Group, Inc., 657 F. Supp. 2d 564, 589-90 (W.D. Pa. 2009) (discussing paid suspension as adverse employment action).

In sum, Defendant has not persuaded the Court that a CEPA claim would be futile, and it appears from parts of Plaintiff's allegations that he may have such a claim if he is permitted to amend the pleadings to make them more specific and clearer.

Therefore, dismissal of this Count will be without prejudice to Plaintiff moving to amend the Complaint to plead a CEPA claim.

## IV. CONCLUSION

The Labor Management Relations Act preempts claims based on contractual rights and duties related to an employment situation governed by a collective bargaining agreement, but it does not preempt claims based on independent state law which cannot be contractually waived. Consequently, Count I (breach of contract) is preempted, and will be dismissed without prejudice to Plaintiff bringing the claim pursuant to the LMRA, if he has a colorable claim under the applicable law. Count II must be dismissed as pleaded, because it either seeks to bring a preempted common law retaliation claim, or it seeks to bring a CEPA claim for which it does not allege a sufficient factual basis. The claim will be dismissed without prejudice to Plaintiff seeking leave to amend the pleadings to state a claim under CEPA. Finally, Count III, VI, and VII will be dismissed as stipulated. Plaintiff will have 21 days to file a motion to amend the Complaint to bring the claims contained in Count I or II in accordance with today's Opinion. The accompanying Order will be entered.

**August 31, 2011**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge